UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,                    :
                                               :
            Plaintiff,                         :
                                               :
vs.                                            :   Case No. 2:18-cv-02589
                                               :
NET LEASE FUNDING 2005, LP, a Delaware         :
limited partnership,                           :
                                               :
            Defendant.                         :
_____/

**<u>COMPLAINT</u>**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, NET LEASE FUNDING 2005, LP, a Delaware limited partnership (sometimes

referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs

pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant's property, a Denny's restaurant, is located at 9001 Shawnee Mission

Parkway, Merriam, Kansas 66202, in Johnson County ("Denny's").

3.      Venue is properly located in the District of Kansas, Kansas City Division, because

venue lies in the judicial district of the situs of the property.   The Defendant's property is located

in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.   The Plaintiff also suffers from low vision.

6.      Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his cousin or uncle who live in the area.

7.      Fred Nekouee has visited the property which forms the basis of this lawsuit on September 27, 2018, and he bought goods and sought to avail himself of the services at Denny's on such date.

8.      Fred Nekouee has visited the Kansas City area near the Denny's in March 2018; July 2018; and September 2018.

9.      Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

10.      The Plaintiff has definite plans and flight reservations to return to the Kansas City area and to the Denny's in December 2018.

11.      Denny's is close to the hotels he stays at in the area and is close to the heavy equipment auction and dealerships and to the home of his cousin and uncle he visits.

12.      Since Denny's is a national chain, the Plaintiff generally knows the quality of the food and beverages there.   He has eaten at other Denny's.

13.     The Plaintiff enjoys the food at Denny's.

14.     For the reasons set forth in paragraphs 6-13 and 25, Fred Nekouee plans to return to the Denny's.

15.     The Plaintiff has encountered architectural barriers at the subject property.

16.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms in the Denny's.

17.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

19.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20.     On his visit to Denny's, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walking surfaces (sidewalks).

21.     The Plaintiff encountered and observed barriers to access in the men's restroom in Denny's; and so, he also tried to use the women's restroom, in which women's restroom he also encountered and observed barriers to access.

22.     The Plaintiff is deterred from visiting the Denny's even though he enjoys its food, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23.     Defendant owns, leases, leases to, or operates a place of public accommodation

3

(restaurant) as defined by the ADA, 42 U.S.C. § 12181(7)(B), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.   Defendant is responsible for complying with the obligations of the ADA.   The place of public accommodation that the Defendant owns, operates, leases or leases to is Denny's.

24.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 28 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

25.    Fred Nekouee desires to visit Denny's not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

26.    The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

27.    The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

28.    Preliminary inspections of Denny's have shown that violations exist.   The violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.  As shown in the photograph below taken on September 27, 2018, in the parking lot serving Denny's, there are no parking spaces for disabled patrons with van accessible signage in violation of Federal Law 2010 ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage.



b.  The running slope of the accessibility ramp in front of the entrance door is as steep as 1:6.9 (14.4%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this steep slope in his wheelchair, and it made it very difficult for him to move up the ramp.

c.  The transition from the access aisles of the parking place marked for disabled use to the ramp leading to the accessible route to the restaurant contains a change of level of about 0.75 of an inch, which change in level is greater than the maximum allowed elevation

change of 0.5 of an inch, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4. The Plaintiff encountered this change of level in his wheelchair, and it was difficult for him to move around it in his wheelchair.

d.   The accessibility ramp landing has a slope as steep as 1:33.3 (3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   In his wheelchair, the Plaintiff encountered this steep slope of the landing, and it caused him to be unstable in his wheelchair.

**ENTRANCE DOOR AND INTERIOR FOOD SERVICE AREA**

e.   The force needed to open the interior foyer door to Denny's is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff encountered this condition, and he required assistance to move through this door in his wheelchair.

f.   The force needed to open the exterior foyer door to Denny's is about 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff encountered this condition, and he required assistance to move through this door in his wheelchair.

g.   The top of the counter throughout the restaurant is about 43 inches above the finish floor and higher than the maximum allowed counter height of 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 904.4.1.   In his wheelchair, the Plaintiff could not reach or use items on the counter.

**MEN'S RESTROOM**

h.   The force needed to open the entrance door to the men's restroom in Denny's is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff encountered this condition, and he required assistance to move through this door in his wheelchair.

i.   In the men's restroom, the door pull in the accessible toilet compartment is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   In his wheelchair, the Plaintiff encountered this condition and he could not fully close the door to this compartment.

j.    In the men's restroom, the side wall grab bar is only about 36 inches long and less than the required minimum of 42 inches (1065 mm), in violation of Federal Law 2010, ADAAG § 604.5.1.   The Plaintiff encountered this condition and it made it difficult for him to support himself using the grab bar to transfer from his wheelchair to sit on the toilet.

k.   In the men's restroom, the side wall grab bar only extends 42 inches from the rear wall and not the required minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   The Plaintiff encountered this condition and it made it difficult for him to support himself using the grab bar to transfer from his wheelchair to sit on the toilet.

l.    In the men's restroom, the minimum knee clearance width under the lavatory sink is narrowed by the trash can to 21 inches and less than the required minimum width of 30 inches (760 mm), in violation of Federal Law 2010, ADAAG § 306.2.5.   Care must be taken when locating trash containers.   The Plaintiff encountered the trash can while trying to use the sink, and it caused him difficulty in using the sink.

m.    As shown in the photograph below taken on September 27, 2018, the lavatory pipes under the sink in the men's restroom are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   In his wheelchair, the Plaintiff used this lavatory and risked skin burns and injury to his legs from the uninsulated pipes.



n.    In the men's restroom, the leading edge of the paper towel dispenser protrudes about 6 inches from the wall into the room in the circulation path and is located between 27 inches (685 mm) and 80 inches (2030 mm) above the finish floor, which protrusion is greater than the allowed maximum of 4 inches (100 mm), in violation of Federal Law 2010, ADAAG § 307.2.   The Plaintiff observed this condition.

o.    In the men's restroom, the clear floor space to the alcove urinal (a urinal confined on all or part of three sides where the depth exceeds 24 inches) is about 31 inches wide and less than the required minimum width of 36 inches, in violation of Federal Law 2010, ADAAG §§ 305.7.1 and 305.7.2.   The Plaintiff observed this condition.

p.    The toilet paper dispenser in the men's restroom is outside the reach range of an individual in a wheelchair, which centerline of the dispenser is about 18 inches from the

front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

q.   In the men's restroom, the toilet seat cover dispenser outlet is 53 inches above the finish floor and higher than the maximum reach height of 48 inches above the finish floor, in violation of Federal Law 2010, AGAAG § 308.2.1.   The Plaintiff could not reach these toilet seat covers.

r.   In the men's restroom, the accessible compartment door handle requires tight grasping and pinching and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010 ADAAG § 309.4 and 404.2.7.   The Plaintiff could not open this door with a closed fist or loose grip.

**WOMEN'S RESTROOM**

s.   Fred Nekouee encountered barriers to access in the men's restroom, so he tried the women's restroom the next time he needed to use a restroom.   In the women's restroom, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   Fred Nekouee could not fully close the door to this compartment.

t.   In the women's restroom, the minimum knee clearance width under the lavatory sink is narrowed by the trash can to about 22 inches and less than the required minimum width of 30 inches (760 mm), in violation of Federal Law 2010, ADAAG § 306.2.5.   Care must be taken when locating trash containers.   The Plaintiff encountered the trash can while trying to use the sink, and it caused him difficulty in using the sink.

u.   The lavatory pipes under the sink in the women's restroom are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   In his wheelchair, the Plaintiff used this lavatory and risked skin burns and injury to his legs from the uninsulated pipes.

v.   In the women's restroom, the space between the grab bar and the toilet seat cover dispenser above the grab bar is about 10 inches and less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   The Plaintiff encountered this condition and he had difficulty using the grab bar.

w.   In the women's restroom, the centerline of the toilet paper dispenser is about 14 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff encountered this dispenser, and the toilet paper was outside of his reach from the toilet.

x.   In the women's restroom, the toilet seat cover dispenser outlet is about 53 inches above the finish floor and higher than the maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   The Plaintiff could not reach the toilet seat cover dispenser outlet.

y.   In the women's restroom, the accessible compartment door handle requires tight grasping, pinching or twisting of the wrist and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG § 309.4 and 404.2.7.   The Plaintiff could not open this door using this handle with a closed fist or loose grip.

29.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

30.     The discriminatory violations described in paragraph 28 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

31.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

32.     Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

33.     Plaintiff is without adequate remedy at law and is suffering irreparable harm.

Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

34.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

35.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

36.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

37.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Denny's restaurant and adjacent parking lot spaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the

facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby

designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net
*Attorney for Plaintiff Fred Nekouee*